# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**DANIEL CONWILL, IV**                 **CIVIL ACTION**

**VERSUS**                             **No. 09-4365**

**GREENBERG TRAURIG, L.L.P., JAY I.**       **SECTION I**
**GORDON AND JOHN B. OHLE, III**

## <u>ORDER AND REASONS</u>

Defendants, Greenberg Traurig, L.L.P. ("Greenberg") and Jay Gordon ("Gordon"),

("defendants")[1] have filed motions for summary judgment in the above-captioned case.[2] The

plaintiff has filed an opposition. For the following reasons, the motions[3] for summary judgment

are **GRANTED IN PART** and **DENIED IN PART.**

### *BACKGROUND*

On July 9, 2009, Conwill filed this lawsuit against Gordon, Greenberg Traurig L.L.P.

("Greenberg"), and John B. Ohle, III ("Ohle") asserting claims under the Racketeer Influenced

and Corrupt Organization Act ("RICO"), 18 U.S.C. §§ 1961-1968, and under Louisiana law for

declaratory judgment, unjust enrichment, legal malpractice, breach of contract, breach of

fiduciary duty, fraud, and civil conspiracy to commit fraud ("non-RICO claims").[4] Conwill

---

[1] For purposes of this order and reasons, "defendants" refers to Greenberg and Gordon only and not to John B. Ohle, III.

[2] R. Doc. Nos. 33, 35. Gordon's motion for summary judgment adopted in full the arguments set forth in Greenberg's motion for summary judgment. R. Doc. No. 35-1, p. 1.

[3] R. Doc. Nos, 33, 35.

[4] R. Doc. No. 1. Plaintiff's claims for declaratory judgment and unjust enrichment were dismissed on July 15, 2010.



EXHIBIT
1

alleges that Ohle, a licensed attorney, certified public accountant, and certified financial planner, approached Conwill in 2002, offering financial planning and tax consulting services.[5] Conwill states that Ohle introduced him to Gordon and Greenberg and that in September, 2003, Conwill entered into an attorney-client representation agreement with Gordon and Greenberg for the purpose of obtaining legal tax advice.[6] As part of these legal services, Gordon and Greenberg wrote an October, 2003 opinion letter to Conwill, attesting to the lawful nature of certain tax shelters.[7] Conwill states that the writing of such opinion letter "clearly constitut[ed] legal services."[8]

Conwill alleges in his complaint that the defendants told him that:

(a) [T]hese tax strategies were based on "loopholes" in the tax code; (b) attorneys with a blue-chip law firm had independently and objectively reviewed the tax strategies; (c) these attorneys were specialists with excellent and national reputations and experience; (d) these lawyers had concluded that these tax strategies were lawful; (e) these attorneys would provide Plaintiff with an opinion letter attesting to the legitimacy of the tax strategies and confirming that any losses generated by the tax strategies could properly be claimed as tax losses; (f) [Gordon and Greenberg's] opinion letter, in the event of any IRS or state tax audit, would enable Plaintiff to satisfy federal and state auditors as to the propriety of the tax returns; and (g) [Gordon and Greenberg's] opinion letter would serve as a protection against the imposition of tax penalties in the unlikely event that the IRS or state tax authorities challenged the tax strategies.[9]

In reliance on the preceding advice, Conwill participated in the recommended

---

[5] *Id.* at p. 5.

[6] *Id.*; *Id.* at 19.

[7] *Id.* at p. 5.

[8] *Id.*

[9] *Id.* at pp. 5-6.

2

transactions.[10] Conwill attests that the defendants never revealed to him that they had devised the

tax strategies at issue[11] and that the defendants knew or should have known that the transaction

they advised "was a fraudulent tax shelter transaction which would be deemed abusive by the

IRS."[12]  Conwill also alleges that the defendants did not tell him that their fees were

unreasonable and that their fee-splitting agreements were unethical.[13] Conwill contends that Ohle

received  payments for referring Conwill to Gordon and Greenberg, that Gordon received

payments for recommending that Conwill invest in the tax shelter, and that Greenberg received a

payment for Conwill's investment in the tax shelter.[14] Conwill states that the defendants did not

inform him of the fee-sharing agreements nor did they disclose the alleged conflicts of interest.[15]

To date, plaintiff claims he has suffered the following damages as a result of his

transactions with the defendants:

> (a) fees paid to [Gordon and Greenberg]; (b) additional taxes assessed by the IRS
> and state taxing authorities for the tax years that Plaintiff participated in the tax
> strategies; (c) interest and penalties assessed by the IRS and state taxing
> authorities; (d) lost opportunity costs; and (e) amounts paid to new tax and legal
> advisors in order to help extricate Plaintiff from the problems created by
> Defendants.[16]

Defendants' motion for summary judgment asserts that all of plaintiff's claims are time

---

[10]*Id.* at p. 6.

[11]*Id.*

[12]*Id.* at p. 11.

[13]*Id.* at p. 6.

[14]*Id.*

[15]*Id.*

[16]*Id.* at p. 8.

3

barred.

### *LAW AND ANALYSIS*

#### A. Summary Judgment

Summary judgment is proper when, after reviewing "the pleadings, the discovery and disclosure materials on file, and any affidavits," the court determines there is no genuine issue of material fact. Fed. R. Civ. P. 56(c). The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Celotex*, 477 U.S. at 323; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The non-moving party must carry this burden as to each essential element on which it bears the burden of proof. *Schaefer v. Gulf Coast Regional Blood Center*, 10 F.3d 327, 330 (5th Cir. 1994). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty*

4

*Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue.  *Id.*  The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255; *see Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

**B. RICO Statute of Limitations**

Civil RICO claims are subject to a four-year statute of limitations. *Rotella v. Wood*, 528 U.S. 549, 552, 120 S.Ct. 1075, 145 L.Ed.2d 1047 (2000).  To determine when a RICO claim accrues, the Fifth Circuit applies the "injury discovery" rule, whereby the limitations period runs from the date on which "the plaintiff discovers, or should have discovered, the injury." *Love v. Nat'l Med. Enter.*, 230 F.3d 765, 773 (5th Cir. 2000). Plaintiff's discovery of the injury, not plaintiff's discovery of the other elements of a RICO claim, is the event that "starts the clock." *Rotella*, 528 U.S. at 555.

Plaintiffs are "not permitted a leisurely discovery of the full details of the alleged scheme. A plaintiff who has learned of facts which would cause a reasonable person to inquire further must proceed with a reasonable and diligent investigation and is charged with the knowledge of all facts such an investigation would have disclosed." *Snelling v. Jensen*, 841 F.2d 600, 607 (5th Cir. 1988) (discussing inquiry notice in the context of federal securities claims) (internal citations and quotations omitted). "Investors are not free to ignore 'storm warnings' which would alert a reasonable investor to the possibility of fraudulent statements or omissions." *Id.* In *Cetel v. Kirwan Fin. Grp., Inc.*, the U.S. Court of Appeals for the Third Circuit explained "storm warnings" as follows:

5

> Storm warnings have not been exhaustively catalogued, but they are essentially any information or accumulation of data "that would alert a reasonable person to the probability that misleading statements or significant omissions had been made." [*Mathews v. Kidder Peabody & Co.*, 260 F.3d 239, 252 (3d Cir. 2001).] This is an objective inquiry and hinges not on a plaintiff's actual awareness of suspicious circumstances or even on the ability of a plaintiff to understand their import. Instead, "[i]t is enough that a reasonable investor of ordinary intelligence would have discovered the information and recognized it as a storm warning." *Id.* This charge saddles the investor with responsibilities like reading prospectuses, reports, and other information related to the investments, *Mathews*, 260 F.3d at 252, and, additionally, assumes knowledge of "publicly available news articles and analyst's reports." [*Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital Mgmt. L.P.*, 435 F.3d 396, 400 (3d Cir. 2006)] (quoting *Lui v. Credit Suisse First Boston Corp. (In re Initial Public Offering Sec. Litig.)*, 341 F.Supp.2d 328, 345 (S.D.N.Y. 2004)).

460 F.3d 494, 507 (3d Cir. 2006).[17]  A defendant asserting the affirmative defense of the

expiration of a limitations period bears the burden of proof.  *Frame v. City of Arlington*, 575

F.3d 432, 441 (5th Cir. 2009) (citing Fed. R. Civ. P. 8).[18]

Defendants assert that an April 7, 2004 letter signed by Gordon and a December 8, 2004

letter signed by a representative of Greenberg put Conwill on inquiry notice of his injury.[19]  The

April 7, 2004 letter stated that "the IRS issued Notice 2003-81 last December" which "specified

---

[17]The Third Circuit further explains in *Cetel* that once the defendant has met its burden of showing "storm warnings," the burden then shifts "to plaintiffs to show that, heeding the storm warnings, they exercised reasonable diligence but were unable to find and avoid the storm." 460 F.3d at 507. (internal citations omitted).

[18]Federal courts recognize the equitable doctrine of fraudulent concealment, which may toll the statute of limitations. *Astoria Entertainment, Inc. v. Edwards*, 159 F. Supp. 2d 303, 316 (E.D. La. 2001). A plaintiff "'may invoke the fraudulent concealment doctrine only by proving two elements: first, that the defendants concealed the conduct complained of, and second, that the plaintiff failed, despite the exercise of due diligence on his part, to discover the facts that form the basis of his claim.'" *Id.* (quoting *State of Texas v. Allan Construction Company, Inc.*, 851 F.2d 1526, 1528 (5th Cir. 1988).
Although plaintiff has not specifically invoked the doctrine of fraudulent concealment, plaintiff states in his opposition that "Mr. Conwill's allegations [in his complaint] include that the defendant's actions included concealing their wrongful conduct." R. Doc. No. 42, p. 12. Because the Court finds that plaintiff's RICO claims are not prescribed, the Court does not address whether the doctrine of fraudulent concealment applies in this case.

[19]R. Doc. No. 33-1, p. 3.

6

a transaction similar to [the transactions in which Conwill invested] as a 'listed transaction' for purposes of the tax shelter regulations. Any transaction that is the same as or substantially similar to a 'listed transaction' is subject to disclosure. . . ."[20] The letter suggested that Conwilll "discuss these disclosure requirements with your return preparer."[21] The letter further explained:

> When the IRS specifies a transaction as a 'listed transaction'. . . [it] does not directly address the merits of such transaction from a tax standpoint. That said, it is generally assumed that the IRS will challenge the tax consequences of every 'listed transaction' at some point in the future. *The outcome of such challenge is impossible to predict at this time.*[22]

The letter also informed Conwill that he had "the option to file a qualified amended return . . . that [would reverse] the tax consequences of the transaction."[23]

The December 8, 2004 letter sent to Conwill informed him that Greenberg had provided a list of reportable transactions to the IRS and that the list included Conwill's transactions.[24] The letter further stated that the IRS had requested additional information concerning Conwill's transaction and it requested Conwill's permission to disclose the requested information.[25]

The Court finds that defendants have not met their burden of showing that, having received such letters, plaintiff "knew or should have known" about his injuries. Defendants have not demonstrated that the letter would "alert a reasonable investor to the possibility of fraudulent statements or omissions" by defendants. *See Snelling*, 841 F.2d at 607; *see also Cetel*, 460 F.3d

---

[20] *Id.*

[21] *Id.*

[22] *Id.* (emphasis added).

[23] R. Doc. No. 33-2, p. 3.

[24] R. Doc. No. 83-1, p. 4.

[25] *Id.*

7

at 507. The letters neither retracted nor directly contradicted any previous statements by defendants and they did not inform plaintiff that he would likely suffer adverse tax consequences. Nor is the fact that plaintiff retained counsel to represent him with respect to federal tax matters determinative.

### C. Peremption Pursuant to Louisiana Revised Statute 9:5605

Gordon and Greenberg assert that plaintiff's claims against them have been extinguished by a Louisiana peremptive statute that places an absolute time limit on bringing malpractice-related claims in this state. *See* La. Rev. Stat. 9:5605.[26][27]  Louisiana Revised Statute 9:5605

---

[26]Neither party disputes that Louisiana law governs the applicable prescriptive/peremption periods in this case.

[27] Louisiana Revised Statute 9:5605 states, in pertinent part:
*Actions for legal malpractice*
A. No action for damages against any attorney at law duly admitted to practice in this state, any partnership of such attorneys at law, or any professional corporation, company, organization, association, enterprise, or other commercial business or professional combination authorized by the laws of this state to engage in the practice of law, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide legal services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered; however, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.

B. The provisions of this Section are remedial and apply to all causes of action without regard to the date when the alleged act, omission, or neglect occurred. However, with respect to any alleged act, omission, or neglect occurring prior to September 7, 1990, actions must, in all events, be filed in a court of competent jurisdiction and proper venue on or before September 7, 1993, without regard to the date of discovery of the alleged act, omission, or neglect. The one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.

C. Notwithstanding any other law to the contrary, in all actions brought in this state against any attorney at law duly admitted to practice in this state, any partnership of such attorneys at law, or any professional law corporation, company, organization, association, enterprise, or other commercial business or professional combination authorized by the laws of this state to engage in the practice of law, the prescriptive and peremptive period shall be governed exclusively by this Section.

D. The provisions of this Section shall apply to all persons whether or not infirm or under disability of any kind and including minors and interdicts.

E. The peremptive period provided in Subsection A of this Section shall not apply in cases of fraud, as defined in

states that an "action for damages . . . whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide legal services" is subject to a peremption period of one year from the date of the "alleged act, omission, or neglect" or one year from the date on which such "alleged act, omission, or neglect is discovered or should have been discovered." La. Rev. Stat. 9:5605(A). Moreover, legal malpractice actions are also subject to a peremption period of three years from the date of the alleged act, omission, or neglect. *Id.* As the court explained in *Evans v. Bank of Switzerland*:

> Unlike prescription, which "merely prevents the enforcement of a right," peremption "destroys the right itself." La. Civ. Code art. 3458, comment (b). Peremption differs from prescription also in that it is not subject to interruption or suspension. La. Civ. Code art. 3461. To avoid peremption under section 9:5605, a claim must be brought "within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered." La. Rev. Stat. § 9:5605(A). Moreover, "even as to actions filed within [this] one year" period, "in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect." *Id.*

2002 WL 31682787 at *6 (E.D. La. 2002).

Plaintiff entered into an attorney-client relationship with defendants for the purpose of obtaining legal tax advice in 2003.[28] Plaintiff states that an October, 2003 opinion letter by defendants attesting to the lawful nature of certain tax shelters "clearly constitut[ed] legal advice."[29] Plaintiff concedes in an affidavit that he discovered "the full breadth of the wrongful conduct by the defendants . . . and my resulting injuries" in October, 2007.[30]  Plaintiff did not file

---

Civil Code Article 1953.

[28]R. Doc. No. 1, p. 5.

[29]*Id.*

[30]R. Doc. No. 42-1, p. 4.

9

the above captioned lawsuit until July, 2009. Accordingly, although plaintiff asserts that Louisiana Revised Statute 9:5605 does not apply because (1) the statute does not apply to out-of-state attorneys and (2) the statute is limited to traditional legal malpractice claims, plaintiff's claims against defendants may be perempted if Louisiana Revised Statute 9:5605 applies.[31]

   *Application of Louisiana Revised Statute 9:5605 to Out-of-State Attorneys*

   Louisiana Revised Statute 9:5605 applies to actions for damages "against any attorney at law duly admitted to practice in this state, any partnership of such attorneys at law, or any professional corporation, company, organization, association, enterprise, or other commercial business or professional combination authorized by the laws of this state to engage in the practice of law." La. Rev. Stat. 9:5605(A).  Plaintiff argues that such statute does not apply to out-of-state attorneys.  Defendants urge the Court to adopt the 2002 holding of the district court in *Evans* that Louisiana Revised Statute 9:5605 applies to out-of-state attorneys and law firms "whose activities are 'authorized' - that is, permitted, allowed, and not prohibited - under Louisiana law." 2002 WL 31682787 at *8.

   In 2006, the U.S. Court of Appeals for the Fifth Circuit in *Henry v. Duane Morris, LLP*, 210 F. App'x 356, 2006 WL 3677088 (5th Cir. Dec. 12, 2006) considered the applicability of such statute to a law firm not licensed to practice in Louisiana.  In that case, the Fifth Circuit stated that as the Louisiana Supreme Court had not decided this issue and "[b]ecause there is no guidance on the applicability of § 9:5605 to the facts at issue here, we decline to determine how

---

[31]In a supplemental response to the motion for summary judgment, plaintiff argues that he actually learned of defendants' legal malpractice in the fall of 2008. *See* R. Doc. No. 155, pp. 13-15. Plaintiff has not presented any admissible evidence in support of such argument. Moreover, such argument directly contradicts plaintiff's sworn affidavit that he learn[ed] of the *full breadth of the wrongful conduct* by the defendants . . . [and] my *resulting injuries*" in October, 2007. R. Doc. No. 42-1, p. 4. (emphasis added).

the Louisiana Supreme Court would rule on this issue. . . . Instead we apply the more general, one-year prescriptive period in La. Civ. Code Ann. Art 3492 [to the legal malpractice claim], which applies if a more specific peremptory period does not apply." *Id.* at 359.  Concurring in *Brown v. Slenker*, U.S. Fifth Circuit Court of Appeals Judge Thomas Reavley stated that "[t]he one year prescription period of LSA-R.S. 9:5605 only applies to claims against attorneys licensed to practice in Louisiana." 220 F.3d 411, 427 (5th Cir. 2000).  This Court will follow the Fifth Circuit's approach in *Henry* and it declines to apply Louisiana Revised Statute 9:5605 to plaintiff's claims.

### Prescription Pursuant to La. Civ. Code Ann. art 3492

Pursuant to *Henry*, this Court applies the one-year prescriptive period in Louisiana Civil Code Article 3492 to plaintiff's legal malpractice claim.  Plaintiff's fraud claim is also subject to the one-year prescriptive period in Louisiana Civil Code Article 3492. *Winn Fuel Service, Inc. v. Booth*, 34 So.2d 515, 519 (La. App. 2 Cir. 2010).

Plaintiff states in an affidavit that he 'learn[ed] of the full breadth of the wrongful conduct by the defendants . . . [and] my resulting injuries" in October, 2007. [32]  Therefore, his legal malpractice claim and fraud claims accrued more than one year before he filed his lawsuit in July, 2009. Accordingly, plaintiff's legal malpractice claim and plaintiff's fraud claim are prescribed pursuant to Louisiana Civil Code Article 3492.

### Plaintiff's Conspiracy Claim

Because plaintiff's fraud claim is prescribed, his claim for civil conspiracy to commit

---

[32]R. Doc. No. 42-1, p. 4. Plaintiff does not allege that the doctrine of *contra non valentem* is applicable to the one-year prescriptive period. Pursuant to the doctrine of *contra non valentem*, if a plaintiff can show that he was unaware of his cause of action until a year before the date he filed the malpractice suit, he could escape the application of the prescriptive period in Louisiana Civil Code article 3492. *See Henry*, 210 F. App'x. at 356.

fraud must also be dismissed. Louisiana does not recognize an independent tort of civil

conspiracy. *Butz v. Lynch*, 710 So.2d 1171, 1174 (La. App. 1 Cir. 1998); *Rhyce v. Martin*, 173 F.

Supp. 2d 521, 535 (E.D. La. 2001). "The actionable element under article 2324 is the intentional

tort the conspirators agreed to commit and committed in whole or in part causing plaintiff's

injury." *Rhyce*, 173 F. Supp. at 535.  Because plaintiff's claim for fraud is prescribed, plaintiff

may not recover for a conspiracy to commit fraud.[33]

### Plaintiff's RICO Claim

To the extent that defendants' motions for summary judgment assert that plaintiff's RICO

claim is barred by a Louisiana state law statute of limitations period, the motions are denied. The

U.S. Supreme Court has held that, pursuant to federal law, a four-year statute of limitations

period applies to civil RICO claims. *Rotella*, 528 U.S. at 552 (citing *Agency Holding Corp. v.*

*Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987)).

Greenberg makes no effort to distinguish such precedent and admits that no Louisiana court has

held that Louisiana Revised Statute 9:5605 applies to RICO claims.[34]

### Plaintiff's Claims for Breach of Contract

Under Louisiana law, "[t]he correct prescriptive period to be applied in any action

depends on the nature of the action; it is the duty breached that should determine whether an

action is in tort or contract." *Terrebonne Parish School Bd. v. Mobil Oil Corp.*, 310 F.3d 870,

886 (5th Cir. 2002). Pursuant to Louisiana Civil Code article 3499, a ten-year prescriptive period

---

[33]The Court observes that plaintiff's complaint failed to identify the underlying intentional tort that was the basis for the alleged conspiracy. *See* R. Doc. No. 1, pp. 22-23. Plaintiff's counsel stated at a July 15, 2010 telephone status conference that plaintiff was alleging a conspiracy to commit *fraud*. R. Doc. No. 143.

[34]R. Doc. No. 33-1, p. 10.

applies to breach of contract claims. *Id.*; *First Louisiana Bank v. Morris & Dickson Co., LLC*, 6
So. 3d 1047, 1051 (La. App. 2 Cir. 2009). As stated, a one-year prescriptive period applies to
delictual actions. La. Civ. Code. art. 3492.

The distinction between contractual and delictual damages is that contractual damages
"flow from an obligation contractually assumed by the obligor," while delictual damages "flow
from a violation of general duty owed by all persons." *Terrebonne Parish*, 310 F.3d at 886-87.
Accordingly, in order to maintain a claim for breach of contract, the claimant must allege that the
defendant breached a particular contractual provision or duty. *Richard v. Wal-Mart Stores, Inc.*,
559 F.3d 341, 345 (5th Cir. 2009). Even if the parties are bound by a contract, "unless a specific
contract provision is breached, Louisiana treats the action as tort." *Id.* (citations omitted).

Prior to the enactment of Louisiana Revised Statute 9:5605 in 1990, Louisiana courts
held that, although actions for legal malpractice against an attorney are generally subject to the
one-year prescriptive period, there are two exceptions:

> (1) when the attorney expressly warrants a specific result and fails to obtain that
> result, and (2) when the attorney agrees to perform certain work and does nothing
> whatsoever. In these two contexts, the action is in contract and subject to the
> ten-year prescriptive period provided by LSA-C.C. Art. 3499.

*Lima v. Schmidt*, 595 So.2d 624, 628 n.1-2 (La. 1992).

Plaintiff alleges that his cause of action for breach of contract against defendants is
subject to the second exception, i.e., the defendants agreed to perform certain work and did
nothing whatsoever. Plaintiff argues that defendants entered into an agreement with defendant to
render independent tax advice to defendant and, instead, they issued a "prefabricated 'opinion

letter'" to Conwill.[35]

Plaintiff's complaint is replete with allegations with respect to defendants' conduct. For example, plaintiff alleges that he entered into an attorney-client representation agreement with Gordon and Greenberg for the purpose of obtaining legal tax advice.[36] Plaintiff's complaint states that as part of these legal services, Gordon and Greenberg wrote an October 2003 opinion letter to Conwill, attesting to the lawful nature of certain tax shelters.[37] Conwill states in his complaint that the writing of such opinion letter "clearly constitut[ed] legal services."[38] Plaintiff has not demonstrated that defendants did "nothing whatsoever." Accordingly, the one-year prescriptive period for legal malpractice applies to plaintiff's claim for breach of contract against defendants and such claim is prescribed.

### Plaintiff's Claims for Breach of Fiduciary Duty

Louisiana case law provides guidance with respect to the applicable prescriptive period for a breach of fiduciary duty.[39] A claim for breach of fiduciary duty may be subject to either a one-year prescriptive period pursuant to Louisiana Civil Code 3492 or a ten-year prescriptive period pursuant to Louisiana Civil Code 3499. "[W]hen an alleged breach of fiduciary duty is in the nature of simple negligence, it is treated as a delictual offense, carrying with it a one-year

---

[35]R. Doc. No. 155, p. 10.

[36]R. Doc. No. 1, p. 5.

[37]*Id.*

[38]*Id.*

[39]The U.S. Court of Appeals for the Fifth Circuit has suggested that Louisiana Revised Statute 9:5605 would not necessarily apply to a breach of fiduciary duty claim against an attorney. *Davis v. Parker*, 58 F.3d 183, 191 n.10 (5th Cir. 1995) ("[I]t is not completely clear that section 5605 applies to a breach of fiduciary duty claim . . .[because] it is not clear to us that a breach of fiduciary duty claim can be characterized as a 'traditional legal malpractice' claim.").

14

prescriptive period. On the other hand, when the breach of fiduciary duty alleged is in the nature of deliberate fraud, it is treated as a personal action which, under La. Civ. Code Art. 3499, carries with it a ten-year prescriptive period." *Univ. Rehab. Hosp., Inc. v. Int'l Coop.*, 2006 WL 2983050 at \*4 (W.D. La. Oct. 16, 2006) (citing *Young v. Adolph*, 821 So.2d 101, 106 (La. App. 5 Cir. 2002)); *see also Gerdes v. Estate of Cush*, 953 F.2d 201, 205 (5th Cir. 1992) ("[w]here the attorney has breached the fiduciary duty to the client by engaging in self-dealing . . . the ten year prescriptive period applies." 953 F.2d 201, 204 (5th Cir. 1992)); *Marsh Engineering v. Parker*, 688 So.2d 1042, 1045 (La. App. 3 Cir. 1996).

In this case, plaintiff alleges that defendants breached their fiduciary duties by advising plaintiff to pay "exorbitant fees" to engage in tax strategies created by defendants which defendants "knew or should have known to be improper or illegal."[40] Plaintiff alleges that Gordon received payments for recommending that Conwill invest in the tax shelter, and that Greenberg received a payment for Conwill's investment in the tax shelter.[41] Plaintiff has alleged that defendants breached their fiduciary duties by engaging in fraudulent conduct and self-dealing and, therefore, the ten-year prescriptive period under Louisiana Civil Code Article 3499 is applicable to plaintiff's claims for breach of fiduciary duty. Plaintiff's breach of fiduciary duty claim is not prescribed.

### CONCLUSION

Considering the foregoing,

**IT IS ORDERED** that Gordon's and Greenberg's motions for summary judgment are

---

[40]R. Doc. No. 1, p. 20.

[41]*Id.* at p. 6.

**GRANTED** in that plaintiff's claims for legal malpractice, fraud, conspiracy to commit fraud, and breach of contract are **DISMISSED WITH PREJUDICE**. The motions for summary judgment are **DENIED** with respect to plaintiff's civil RICO claim and plaintiff's claim for breach of fiduciary duty.

New Orleans, Louisiana, July 28, 2010.

LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE

16

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DANIEL O. CONWILL, IV** | **CIVIL ACTION** |
| **VERSUS** | **NO: 09-4365-LMA-SS** |
| **GREENBURG TRAURIG, LLP, et al** | |

## <u>ORDER</u>

PLAINTIFF'S MOTION FOR LEAVE TO AMEND (Rec. doc. 151)

**DENIED**

The plaintiff, Daniel O. Conwill, IV ("Conwill"), requests leave to amend his complaint. He contends that: (1) the amendment is required to clarify and amplify his allegations with information learned from the trial of the defendant, John B. Ohle, III ("Ohle"), which concluded on June 2, 2010; (2) the amendment will clarify the underlying torts for his civil conspiracy claims under Louisiana and New York law; and (3) the amendment will not unduly delay the proceedings as substantial discovery remains. He requests leave to file a thirty-two page amended and supplemental complaint with eighty pages of exhibits. Conwill does not represent that the amendment will not require a continuance of the trial.

The pretrial conference is set for September 30, 2010; and the jury trial is set for October 25, 2010. Rec. doc. 58. On August 6, 2010, the discovery deadline was extended to August 31, 2010. Rec. doc. 169.

In <u>S&W Enterprises, L.L.C. v. Southtrust Bank of Alabama, NA</u>, 315 F.3d 533 (5th Cir. 2003), the Fifth Circuit held that Fed. R. Civ. P. 16(b) governs the amendment of pleadings after a deadline in a scheduling order has expired.



> Only upon the movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15(a) apply to the district court's decision to grant or deny leave.

Id. at 536.  The Fifth Circuit applied a four-part test to determine whether the district court's refusal to modify its scheduling order was an abuse of discretion: (1) the explanation for the failure to move timely for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice.  Id. at 536.

Conwill devotes a single footnote to Rule 16(b) and contends that good cause exists to modify the scheduling order and amend his complaint pursuant to Fed. R. Civ. P. 15(a).  Rec. doc. 151 at 4, n.1.  Assuming that Conwill has provided a satisfactory explanation for the delay and demonstrated the importance of the amendment, the defendant, Greenberg Traurig, LLP ("Greenberg"), contends it will be prejudiced because of the limited time remaining in the scheduling order and Conwill's introduction of a claim for punitive damages under New York law.  The District Judge's orders demonstrate that a continuance of the trial is not available.  Conwill has not demonstrated good cause to modify the scheduling order.

IT IS ORDERED that Conwill's motion for leave to amend (Rec. doc. 151) is DENIED.

New Orleans, Louisiana, this 12th day of August, 2010.

**SALLY SHUSHAN**
**United States Magistrate Judge**

2

No. 11-30360

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

DANIEL CONWILL, IV,

Plaintiff-Appellant-Cross-Appellee

versus

GREENBERG TRAURIG, L.L.P., et al.,

Defendants-Appellees-Cross-Appellants

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF LOUISIANA, SECTION I, HON. LANCE AFRICK,
PRESIDING, CIVIL ACTION NO 2:09-CV-4365

---

## UNOPPOSED MOTION TO VOLUNTARILY DISMISS APPEAL PURSUANT TO F.R.A.P. 42(B) BY PLAINTIFF-APPELLANT-CROSS-APPELLEE DANIEL CONWILL, IV

GLADSTONE N. JONES, III (La. #22221),
Lead Counsel
LYNN E. SWANSON (La. #22650)
H.S. BARTLETT III (La. #26795)
CATHERINE E. LASKY (La. #28652)
JONES, SWANSON, HUDDELL &
GARRISON, L.L.C.
601 Poydras Street, Suite 2655
New Orleans, Louisiana 70130
Telephone (504) 523-2500

COUNSEL FOR DANIEL CONWILL, IV



EXHIBIT
3

## CERTIFICATE OF INTERESTED PERSONS

No. 11-30360

Daniel Conwill, IV,

Plaintiff-Appellant-Cross-Appellee

versus

Greenberg Traurig, L.L.P., et al.,

Defendants-Appellees-Cross-Appellants

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of U.S. 5th Circuit Local Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1. Daniel O. Conwill, IV, Plaintiff-Appellant-Cross-Appellee.

2. Greenberg Traurig, L.L.P., Defendant-Appellee-Cross-Appellant; pursuant to Fed. R. App. P. 26.1(a), there is no parent corporation or publicly held corporation that owns more than 10% interest in this entity.

3. Jay I. Gordon, Defendant-Appellee-Cross-Appellant.

4. John B. Ohle, III (Federal Prisoner: #40824-424), Defendant-Appellee (pro se).

i

5. Gladstone N. Jones, III, and his law firm, Jones, Swanson, Huddell & Garrison, LLC, counsel for Plaintiff-Appellant-Cross-Appellee.

6. Lynn E. Swanson, counsel for Plaintiff-Appellant-Cross-Appellee.

7. Catherine E. Lasky, counsel for Plaintiff-Appellant-Cross-Appellee.

8. Harvey S. Bartlett III, counsel for Plaintiff-Appellant-Cross-Appellee.

9. Daniel Lund, and his law firm, Montgomery Barnett, counsel for Defendant-Appellee-Cross-Appellant Greenberg Traurig, L.L.P..

10. Ryan M. McCabe, counsel for Defendant-Appellee-Cross-Appellant Greenberg Traurig, L.L.P..

11. Stephen H. Kupperman, and his law firm, Barrasso, Usdin, Kupperman, Freeman & Sarver, L.L.C., counsel for Defendant-Appellee-Cross-Appellant Jay I Gordon.

12. Jamie L. Berger, counsel for Defendant-Appellee-Cross-Appellant Jay I. Gordon.

/s/ Harvey S. Bartlett III
Harvey S. Bartlett III
Counsel of Record for Daniel Conwill, IV

## UNOPPOSED MOTION TO VOLUNTARILY DISMISS APPEAL
## PURSUANT TO F.R.A.P. 42(B)

Plaintiff-Appellant-Cross-Appellee Daniel O. Conwill, IV, moves to voluntarily dismiss his appeal in this matter, pursuant to Fed. R. App. P. 42(b) and Fifth Circuit Rule 42.1. Counsel for Mr. Conwill has contacted counsel for appellees-cross-appellants Greenberg Traurig, L.L.P. ("Greenberg") and Jay I. Gordon regarding the filing of this motion. Counsel for Greenberg and Mr. Gordon confirmed that neither Greenberg nor Mr. Gordon oppose Mr. Conwill's voluntary dismissal of his appeal. Counsel for Mr. Conwill has also sent a letter via U.S. Postal certified mail to pro se appellee John B. Ohle, III, at his address at the Federal Prison Camp in Pensacola, Florida, regarding the filing of this motion, and Mr. Ohle has not responded.

Counsel for Mr. Conwill have confirmed that there are no outstanding fees or costs due in conjunction with Mr. Conwill's appeal in this matter. Accordingly, pursuant to Fifth Circuit Rule 42.1, Mr. Conwill requests that the clerk enter an order of dismissal of his appeal and issue a copy of that order as the mandate as to Mr. Conwill's appeal.

Respectfully submitted,

*/s/ Harvey S. Bartlett III*
GLADSTONE N. JONES, III (La. #22221)
LYNN E. SWANSON (La. #22650)
HARVEY S. BARTLETT III (La. #26795)

1

CATHERINE E. LASKY (La. #28652)
JONES, SWANSON, HUDDELL &
      GARRISON, L.L.C.
601 Poydras Street, Suite 2655
New Orleans, Louisiana 70130
Telephone: (504) 523-2500

COUNSEL FOR DANIEL CONWILL, IV

# CERTIFICATE OF SERVICE

I hereby certify that an electronic copy of the above and foregoing Unopposed Motion to Voluntarily Dismiss Appeal has been served on all counsel of record through filing in this Court's electronic filing and notice system, and on pro se appellee John B. Ohle (Federal Prisoner #40824-424) through mail to FPC Pensacola, P.O. Box 3949, Pensacola, FL 32516.

New Orleans, Louisiana, this 9th day of June, 2011.

*/s/ Harvey S. Bartlett III*
Harvey S. Bartlett III
Counsel for Daniel Conwill, IV

## CERTIFICATE OF COMPLIANCE

1.    This brief complies with the Page Limits requirement of Fed. R.
App. P. 27(d)(2), because this brief is less than 20 pages.

2.    This brief complies with the typeface requirements of Fed. R. App.
P. 32(a)(5) and the type style requirements of Fed. R. App. P.
32(a)(6) because this brief has been prepared in a proportionally
spaced typeface using Microsoft Word 97-2003, in 14-pt. Times
New Roman type.

Thus done and signed this 9th day of June, 2011.

/s/ Harvey S. Bartlett III
Gladstone N. Jones, III (La. #22221)
Lynn E. Swanson (La. #22650)
Harvey S. Bartlett III (La. #26795)
Catherine E. Lasky (La. #28652)
JONES, SWANSON, HUDDELL &
            GARRISON, L.L.C.
601 Poydras Street, Suite 2655
New Orleans, Louisiana 70130
(504) 523-2500

ATTORNEYS FOR DANIEL CONWILL, IV

1

```
BCCMGORP                    Plea
1   UNITED STATES DISTRICT COURT
1   SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x
2
3   UNITED STATES OF AMERICA,
3
4             v.                      08 Cr. 1246 (JGK)
4
5   JAY GORDON,
5
6               Defendant.
6
7   ------------------------------x
7
8                                     New York, N.Y.
8                                     December 12, 2008
9                                     10:45 a.m.
9
10
10  Before:
11
11            HON. JOHN G. KOELTL,
12
12                                    District Judge
13
13
14                      APPEARANCES
14
15  LEV L. DASSIN
15       Acting United States Attorney for the
16       Southern District of New York
16  STANLEY J. OKULA
17  NANETTE DAVIS
17       Assistant United States Attorneys
18
18  GERALD SHARGEL
19  ROSS KRAMER
19       Attorneys for Defendant
20
20
21
21
22  ALSO PRESENT:  TRACY AMALADAS, Pretrial Services
23
24
25
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300


EXHIBIT
4

2

```
        8CCMGORP                Plea
 1              (Case called)
 2              MR. OKULA:  Good morning, your Honor, Stanley Okula
 3      for the United States.
 4              THE COURT:  Good morning.
 5              MS. DAVIS:  Good morning, your Honor, Nanette Davis.
 6              MR. SHARGEL:  Gerald Shargel with Ross Kramer for
 7      Mr. Gordon, your Honor.
 8              THE COURT:  I note that the defendant is present.
 9              I understand that the defendant has an application.
10              MR. SHARGEL:  Yes.  The application is to waive
11      indictment and to plead guilty to a two-count information that
12      your Honor has in front of you and that's the application.
13              THE COURT:  Is the plea pursuant to a plea agreement?
14              MR. SHARGEL:  Yes, your Honor.  More aptly, a
15      cooperation agreement.
16              THE COURT:  I usually term it plea agreement still.
17              I have a letter, dated December 11, 2008, from
18      Mr. Okula, approved by Ms. Neiman, appears to be signed by
19      Mr. Gordon and yourself today.  Is that the plea agreement?
20              MR. SHARGEL:  Yes, sir.
21              THE COURT:  I've marked that as Court Exhibit 1.
22              And the defendant has not been arraigned on the
23      information, right?
24              MR. OKULA:  That is correct, your Honor.
25              THE COURT:  I'll incorporate the allocution with
                    SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300
```

3

8CCMGORP                    Plea
1    respect to the waiver of indictment and arraignment on the
2    information together with the plea.
3              Is that satisfactory with everyone?
4              MR. SHARGEL:  Yes, very well.
5              THE COURT:  Mr. Fletcher, please administer the oath
6    to the defendant.
7              (Defendant sworn)
8              THE DEPUTY CLERK:  Please state your name for the
9    record.
10             THE DEFENDANT:  Jay Gordon.
11             THE DEPUTY CLERK:  Thank you.  Please remain standing.
12             THE COURT:  Mr. Gordon, do you understand that you are
13   now under oath and that if you answer any of my questions
14   falsely, your false or untrue answers may later be used against
15   you in another prosecution for perjury or making a false
16   statement?
17             THE DEFENDANT:  Yes, your Honor.
18             THE COURT:  Tell me your full name, please.
19             THE DEFENDANT:  Jay Ira Gordon.
20             THE COURT:  How old are you?
21             THE DEFENDANT:  Fifty-one years old.
22             THE COURT:  How far did you go in school?
23             THE DEFENDANT:  Juris doctor.
24             THE COURT:  Are you a citizen of the United States?
25             THE DEFENDANT:  Yes, your Honor.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

4

8CCMGORP               Plea
1          THE COURT:  Are you able to speak and understand
2    English?
3          THE DEFENDANT:  Yes, your Honor.
4          THE COURT:  Are you now or have you recently been
5    under the care of a doctor or a psychiatrist?
6          THE DEFENDANT:  No.
7          THE COURT:  Have you ever been treated or hospitalized
8    for any mental illness or any type of addiction, including drug
9    or alcohol addiction?
10         THE DEFENDANT:  No.
11         THE COURT:  In the past 24 hours have you taken any
12   drugs, medicine, or pills or have you drunk any alcohol?
13         THE DEFENDANT:  No.
14         THE COURT:  Is your mind clear today?
15         THE DEFENDANT:  Yes, your Honor.
16         THE COURT:  Are you feeling all right today?
17         THE DEFENDANT:  Yes, your Honor.
18         THE COURT:  Do either counsel have any doubt as to the
19   defendant's competence to plead at this time?
20         MR. OKULA:  We have no doubt, your Honor.
21         MR. SHARGEL:  No, sir, no doubt.
22         THE COURT:  Mr. Gordon, Mr. Shargel, your lawyer, has
23   informed me that you wish to waive indictment and agree to
24   proceed by information and that you wish to enter a plea of
25   guilty to the information.
                  SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

5

```
     8CCMGORP                   Plea
1                 Is that what you wish to do?
2                 THE DEFENDANT:  Yes, your Honor.
3                 THE COURT:  Have you had a full opportunity to discuss
4    your case with Mr. Shargel and to discuss the consequences of
5    entering a plea of guilty?
6                 THE DEFENDANT:  Yes, your Honor.
7                 THE COURT:  Are you satisfied with Mr. Shargel and his
8    representation of you?
9                 THE DEFENDANT:  Yes.
10                THE COURT:  Have you also had a full opportunity to
11   discuss the consequences of waiving indictment and agreeing to
12   proceed by information as well as entering a plea of guilty to
13   the information?
14                THE DEFENDANT:  Yes, your Honor.
15                THE COURT:  On the basis of Mr. Gordon's responses to
16   my questions and my observations of his demeanor, I find that
17   he is fully competent to waive indictment, agree to proceed by
18   information, and to enter an informed plea at this time.
19                Now, Mr. Gordon, before I accept any plea from you I
20   am going to be asking you certain questions.  My questions are
21   intended to satisfy me that you wish to plead guilty because
22   you are, in fact, guilty and that you fully understand the
23   consequences of your plea.  Furthermore, that you are pleading
24   guilty knowingly and voluntarily and that there is an
25   independent basis in fact for your plea.
```

6

8CCMGORP                    Plea
1              Do you understand that?
2              THE DEFENDANT:  Yes, your Honor.
3              THE COURT:  Mr. Gordon, I am now going to describe to
4    you certain rights that you have under the Constitution and
5    laws of the United States which rights you will be giving up if
6    you enter a plea of guilty.  Please listen to me very
7    carefully.  If there is anything that I say that you don't
8    understand, please ask me to stop and either I or Mr. Shargel
9    will explain it to you more fully.  All right?
10             THE DEFENDANT:  Yes, your Honor.
11             THE COURT:  Mr. Gordon, under the Constitution and
12   laws of the United States, you have a right to a speedy and
13   public trial by a jury on the charges against you which are
14   contained in the information.
15             Do you understand that?
16             THE DEFENDANT:  Yes, your Honor.
17             THE COURT:  If there were a trial you would be
18   presumed to be innocent and the government would be required to
19   prove you guilty by competent evidence and beyond a reasonable
20   doubt.  You would not have to prove that you were innocent at
21   trial.
22             Do you understand that?
23             THE DEFENDANT:  Yes, your Honor.
24             THE COURT:  If there were a trial a jury composed of
25   12 people selected from this district would have to agree
                 SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

7

```
   8CCMGORP                     Plea
1    unanimously that you were guilty.
2               Do you understand that?
3               THE DEFENDANT:  Yes, your Honor.
4               THE COURT:  If there were a trial you would have a
5    right to be represented by a lawyer and if you could not afford
6    a lawyer a lawyer would be provided to you free of cost.
7               Do you understand that?
8               THE DEFENDANT:  Yes, your Honor.
9               THE COURT:  If there were a trial you would have a
10   right to see and hear all of the witnesses against you and your
11   attorney could cross-examine them.  You would have a right to
12   have your attorney object to the government's evidence and
13   offer evidence on your behalf if you so desired, and you would
14   have the right to have subpoenas issued or other compulsory
15   process used to compel witnesses to testify in your defense and
16   you would not be required to testify.
17               Do you understand all of that?
18               THE DEFENDANT:  Yes, your Honor.
19               THE COURT:  If there were a trial you would have the
20   right to testify if you wanted to, but no one could force you
21   to testify if you didn't want to.  And, furthermore, no
22   inference or suggestion of guilt could be drawn if you chose
23   not to testify at trial.
24               Do you understand that?
25               THE DEFENDANT:  Yes, your Honor.
                       SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```

8

8CCMGORP                    Plea

```
 1          THE COURT:  Mr. Gordon, do you understand each and
 2   every one of the rights that I've described to you?
 3          THE DEFENDANT:  Yes.
 4          THE COURT:  Do you have any questions about any of
 5   those rights?
 6          THE DEFENDANT:  No.
 7          THE COURT:  Do you understand that by entering a plea
 8   of guilty today, you are giving up each and every one of those
 9   rights, that you are waiving those rights, and that you will
10   have no trial?
11          THE DEFENDANT:  Yes, your Honor.
12          THE COURT:  Do you understand that you can change your
13   mind right now and refuse to enter a plea of guilty?  You don't
14   have to enter this plea if you don't want to for any reason at
15   all.  Do you understand that completely?
16          THE DEFENDANT:  Yes, your Honor.
17          THE COURT:  Now, Mr. Gordon, I have received a waiver
18   of indictment.  It reads:  Jay I Gordon, the above-named
19   defendant, who is accused of violating Title 18 United States
20   Code Section 371 and Title 26 United States Code Section
21   7212(a), having been advised of the nature of the charge and of
22   his rights, hereby waives in open court prosecution by
23   indictment and consents that the proceeding may be by
24   information instead of by indictment.
25          It appears to be signed by yourself, witnessed by
```

                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

9

8CCMGORP                         Plea
```
 1   Mr. Fletcher, and signed by your lawyer, Mr. Shargel.
 2                Have you signed this waiver of indictment?
 3                THE DEFENDANT:  Yes, your Honor.
 4                THE COURT:  It's dated today, December 12, 2008.  Did
 5   you sign it today?
 6                THE DEFENDANT:  Yes, your Honor.
 7                THE COURT:  Before you signed it did you discuss it
 8   with your lawyer?
 9                THE DEFENDANT:  Yes, your Honor.
10                THE COURT:  Did he explain it to you?
11                THE DEFENDANT:  Yes, your Honor.
12                THE COURT:  Do you understand what you are doing?
13                THE DEFENDANT:  Yes, your Honor.
14                THE COURT:  Do you understand that you're under
15   absolutely no obligation to waive indictment and agree to
16   proceed by information?
17                THE DEFENDANT:  Yes, your Honor.
18                THE COURT:  Do you understand that if you did not
19   waive indictment and if the government wanted to prosecute you
20   on the charges which are contained in the information, the
21   government would have to present its case to a grand jury which
22   may or may not indict you?
23                Do you understand that?
24                THE DEFENDANT:  Yes, your Honor.
25                THE COURT:  Do you understand that by signing this
```
                      SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

10

8CCMGORP                    Plea

1   waiver of indictment you have given up your right to have your
2   case presented to a grand jury?
3            THE DEFENDANT:  Yes, your Honor.
4            THE COURT:  Do you understand what a grand jury is?
5            THE DEFENDANT:  Yes, your Honor.
6            THE COURT:  Did anyone make any threats or promises to
7   you to get you to waive indictment and agree to proceed by
8   information?
9            THE DEFENDANT:  No.
10           THE COURT:  Did you sign the waiver of indictment
11  knowingly and voluntarily?
12           THE DEFENDANT:  Yes.
13           THE COURT:  I find that the defendant's waiver of
14  indictment is knowing and voluntary.
15           Mr. Gordon, have you seen a copy of the information
16  against you?
17           THE DEFENDANT:  Yes, your Honor.
18           THE COURT:  Do you want me to read the information
19  aloud to you in open court, or do you wish to give up or waive
20  the reading of the information?
21           THE DEFENDANT:  I will waive the reading of the
22  information.
23           THE COURT:  Let me go over the charges with you to
24  make sure that you understand them.
25           Do you understand that if you did not plead guilty the
                    SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

11

8CCMGORP                    Plea

1   government would be required to prove each and every part or
2   element of the charges against you which are contained in the
3   information beyond a reasonable doubt at trial?
4              THE DEFENDANT:  Yes, your Honor.
5              THE COURT:  Count 1 charges the substantive offense of
6   corruptly endeavoring to obstruct and impede the due
7   administration of the internal revenue laws.  Among other
8   things, it alleges that from in or about 1999 through in or
9   about 2004, in the Southern District of New York and elsewhere,
10  Jay I. Gordon, the defendant, did corruptly obstruct and impede
11  and endeavor to obstruct and impede the due administration of
12  the internal revenue laws.
13             And then it goes through:  Among the means and methods
14  used by Jay I. Gordon, the defendant, to corruptly obstruct and
15  impede and endeavor to obstruct and impede the due
16  administration of the internal revenue laws were the following.
17  And then it goes through the false and fraudulent reporting of
18  the tax shelter referral fees, and it also lists the false and
19  fraudulent schedule A itemized deductions, all in violation of
20  Title 26 United States Code Section 7212.
21             Do you understand that's what you are charged with in
22  Count 1 of the information?
23             THE DEFENDANT:  Yes, your Honor.
24             THE COURT:  Do you understand that if you did not
25  plead guilty the government would be required to prove beyond a
                     SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

12

8CCMGORP                    Plea

1    reasonable doubt at trial, first, that you, the defendant,
2    acted corruptly; and, second, that you, the defendant, acted
3    with the intent to impede or obstruct the due administration of
4    justice, in this case, the due administration of the internal
5    revenue laws which include the IRS's efforts to collect,
6    assess, and determine the tax liabilities of individuals and
7    companies.  And when I say corruptly, I mean with an intent
8    toward design to obtain a financial or other advantage for
9    yourself or another.
10           Do you understand that the government would be
11   required to prove all of that beyond a reasonable doubt at
12   trial?
13           THE DEFENDANT:  Yes, your Honor.
14           THE COURT:  Count 2 charges a conspiracy.  In
15   substance, it charges that:  From in or about early 2000
16   through in or about 2004, in the Southern District of New York
17   and elsewhere, Jay I. Gordon, the defendant, together with John
18   B. Ohle, III, and others known and unknown, unlawfully,
19   willfully, and knowingly did combine, conspire, confederate,
20   and agree to defraud the United States and an agency thereof,
21   to wit, the Internal Revenue Service of the United States
22   Department of Treasury, and to commit offenses against the
23   United States; to wit, violations of Title 26 United States
24   Code Sections 7201 and 7206(2).  It was a part and an object of
25   the conspiracy that Jay I. Gordon, the defendant, and his

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

13

8CCMGORP                    Plea

 1    coconspirators unlawfully, willfully, and knowingly would and
 2    did defraud the United States and the IRS by impeding,
 3    impairing, defeating and obstructing the lawful government
 4    functions of the IRS and the ascertainment, evaluation,
 5    assessment and collection of income taxes.
 6              It was a part and an object of the conspiracy that Jay
 7    I. Gordon, the defendant, and his coconspirators unlawfully
 8    willfully, and knowingly would and did attempt to evade and
 9    defeat a substantial part of the income taxes due and owing to
10    the United States by various clients of tax shelter boutique
11    No. 3, in violation of Title 26 United States Code Section
12    7201.
13              It was a further part and an object of the conspiracy
14    that Jay I. Gordon, the defendant, and his coconspirators
15    unlawfully, willfully, and knowingly would and did aid and
16    assist in, procure counsel, and advise the preparation and
17    presentation under and in connection with matters arising under
18    the internal revenue laws of tax returns that were fraudulent
19    and false as to material matters, in violation of Title 26
20    United States Code Section 7206(2).
21              And then means and methods of the conspiracy are
22    listed.  Among the means and methods by which Jay I. Gordon,
23    the defendant, and his coconspirators would and did carry out
24    the objectives of the conspiracy were the following:  It would
25    and did create a false and fraudulent factual scenario to
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

14

8CCMGORP                    Plea

1   support certain tax shelter transactions so that wealthy
2   individuals would pay a percentage of their income and fees to
3   various tax shelter boutiques, the law firm, and the other
4   participants in the transaction rather than paying taxes on the
5   income to the IRS.  They would and did design, market, and
6   implement tax shelter transactions in ways that disguise the
7   fact that the shelters were largely or exclusively tax
8   motivated and lacked substantial nontax business purposes.
9           They would and did prepare and assist in preparing
10  false and fraudulent documents to deceive the IRS, including,
11  but not limited to, engagement letters, transactional
12  documents, representation letters, opinion letters, and
13  correspondence with the IRS.  They would and did make false and
14  misleading statements in connection with efforts by the IRS to
15  ascertain the circumstances surrounding the design marketing
16  implementation of tax shelter transactions as well as the
17  motivation behind the client's participation in the shelter
18  transactions.
19          And then various overt acts are listed in furtherance
20  of the conspiracy, including:  On or about September 23, 2003,
21  Jay I. Gordon, the defendant, signed an engagement letter
22  addressed to coconspirator John B. Ohle, III, which was caused
23  to be sent from New York, New York, to Chicago, Illinois, and
24  various other overt acts are listed in furtherance of the
25  conspiracy.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

8CCMGORP                    Plea

1          Do you understand that that's a summary of what you
2     are charged with in Count 2 of the information?
3          THE DEFENDANT:  Yes, your Honor.
4          THE COURT:  Do you understand that if you did not
5     plead guilty the government would be required to prove beyond a
6     reasonable doubt at trial, first, that two or more persons
7     entered into the unlawful agreement charged in the information
8     beginning in or about 2000; second, that you, the defendant,
9     knowingly and willfully became a member of the conspiracy;
10    third, that one of the members of the conspiracy knowingly
11    committed at least one of the overt acts charged in the
12    information; and, finally, that the overt act or acts which the
13    jury found to have been committed was or were committed to
14    further some objective of the conspiracy.
15         You understand that the government is required to
16    prove all of that beyond a reasonable doubt at trial?
17         THE DEFENDANT:  Yes, your Honor.
18         THE COURT:  With respect to Count 1 of the
19    information, do you understand that the maximum penalty for the
20    crime charged in Count 1 is a maximum sentence of three years'
21    imprisonment, a maximum term of one year supervised release, a
22    maximum fine of the greatest of $250,000 or twice the gross
23    pecuniary gain derived from the offense, or twice the gross
24    pecuniary loss to the United States as a result of the offense,
25    and a mandatory $100 special assessment?
                    SOUTHERN DISTRICT REPORTERS, P.C.
                          . (212) 805-0300

16

8CCMGORP                    Plea

```
 1               THE DEFENDANT:  Yes, your Honor.
 2               THE COURT:  With respect to Count 2 of the
 3     information, the conspiracy count, do you understand that the
 4     maximum penalty is a maximum sentence of five years'
 5     imprisonment, a maximum term of three years' supervised
 6     release, a maximum fine of the greatest of $250,000 or twice
 7     the gross pecuniary gain derived from the offense, or twice the
 8     gross pecuniary loss to a person other than yourself as a
 9     result of the offense, and indeed that's the maximum fine for
10     Count 1 also, and a mandatory $100 special assessment.
11               Do you understand that's the maximum penalty for the
12     crime charged in Count 2?
13               THE DEFENDANT:  Yes, your Honor.
14               THE COURT:  Do you also understand that when I talk
15     about supervised release, supervised release means that you
16     will be subject to monitoring when you are released from prison
17     and that the monitoring is to be under terms and conditions
18     which could lead to reimprisonment without a jury trial if you
19     violate them?
20               THE DEFENDANT:  Yes, your Honor.
21               THE COURT:  Do you understand that if you violated the
22     terms of supervised release and were sentenced to prison, you
23     could be sentenced to prison for the entire term of supervised
24     release without any credit for any time you had already spent
25     on supervised release?
```

17

8CCMGORP                    Plea

1              THE DEFENDANT:  Yes, your Honor.
2              THE COURT:  Do you also understand that as part of
3    your sentence I can also order restitution to any person
4    injured as a result of your criminal conduct?
5              THE DEFENDANT:  Yes, your Honor.
6              THE COURT:  Do you also understand that you are
7    pleading guilty to two separate counts in the information and
8    you will be separately sentenced on each of those counts, and I
9    can order that the sentences on those counts be served
10   concurrently, that is, at the same time, or consecutively, that
11   is, one right after the other.
12             Do you understand that?
13             THE DEFENDANT:  Yes, your Honor.
14             THE COURT:  So you are facing a maximum sentence of
15   eight years' imprisonment, three years on Count 1 and five
16   years on Count 2 if I order the sentences to be served
17   consecutively.
18             Do you understand that?
19             THE DEFENDANT:  Yes, your Honor.
20             THE COURT:  I can also order that the fines be added
21   together and I must order the special assessments to be added
22   together, so you're facing a special assessment of $200.
23             Do you understand that?
24             THE DEFENDANT:  Yes, your Honor.
25             THE COURT:  Do you also understand that if I accept
                    SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

18

8CCMGORP                    Plea

1   your guilty plea and adjudge you guilty, that adjudication may
2   deprive you of valuable civil rights, such as the right to
3   vote, the right to hold public office, the right to serve on a
4   jury, and the right to possess any kind of firearm.
5           Do you understand that?
6           THE DEFENDANT:  Yes, your Honor.
7           THE COURT:  Mr. Gordon, under current law there are
8   sentencing guidelines that judges must consult in determining
9   your sentence.  Have you spoken to Mr. Shargel about the
10  sentencing guidelines?
11          THE DEFENDANT:  Yes, your Honor.
12          THE COURT:  Do you understand that I as the sentencing
13  Court will not be able to determine your guidelines sentence
14  until after a presentence report has been completed by the
15  probation department and after you and your lawyer and the
16  government have had an opportunity to review that report to
17  challenge anything contained in the report and to bring those
18  challenges to my attention?
19          THE DEFENDANT:  Yes, your Honor.
20          THE COURT:  Do you also understand that after the
21  basic guidelines sentencing range is determined, I have the
22  authority in some circumstances to depart upward or downward
23  from the sentence that is otherwise called for by the
24  guidelines in arriving at the final guidelines sentencing range
25  in your case?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

19

8CCMGORP                    Plea
1              Do you understand that?
2              THE DEFENDANT:  Yes, your Honor.
3              THE COURT:  Even after that guidelines sentencing
4    range is determined, I must consult other statutory factors in
5    making my final determination of what the appropriate and
6    reasonable sentence is in your case.
7              Do you understand that?
8              THE DEFENDANT:  Yes, your Honor.
9              THE COURT:  Do you also understand that if you are
10   sentenced to prison, parole has been abolished and you will not
11   be released any earlier on parole?
12             THE DEFENDANT:  Yes, your Honor.
13             THE COURT:  Mr. Gordon, do you understand that if your
14   lawyer or anyone else has attempted to estimate or predict what
15   your sentence will be that their estimate or prediction could
16   be wrong?
17             THE DEFENDANT:  Yes, your Honor.
18             THE COURT:  No one, not your lawyer, not the
19   government, no one, can nor should give you any assurance of
20   what your sentence will be since that sentence can only be
21   determined after the probation department has completed the
22   presentence report, after I have ruled on any challenges to the
23   report, and after I have determined what the appropriate and
24   reasonable sentence is in your case.
25             Do you understand that?
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

20

8CCMGORP                         Plea
1                THE DEFENDANT: Yes, your Honor.
2                THE COURT: And do you also understand that even if
3      your sentence is different from what your lawyer or anyone else
4      told you that it might be or if it's different from what you
5      expect it to be, you will still be bound by your guilty plea
6      and you will not be allowed to withdraw your plea of guilty.
7                Do you understand that?
8                THE DEFENDANT: Yes, your Honor.
9                THE COURT: Now, I've been given the plea agreement,
10     cooperation agreement, the December 11 letter to Mr. Shargel
11     from the government which you've heard me discuss with
12     Mr. Shargel at the outset. It appears that you and Mr. Shargel
13     have signed it today. I've marked it as Court Exhibit 1.
14               Have you signed this plea agreement?
15               THE DEFENDANT: Yes.
16               THE COURT: Did you read the agreement before you
17     signed it?
18               THE DEFENDANT: Yes, your Honor.
19               THE COURT: Did you discuss it with your lawyer before
20     you signed it?
21               THE DEFENDANT: Yes, your Honor.
22               THE COURT: Did you fully understand the agreement
23     before you signed it?
24               THE DEFENDANT: Yes, your Honor.
25               THE COURT: Does this letter agreement constitute your
                         SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300

21

8CCMGORP                    Plea

1  complete and total understanding of the entire agreement
2  between the government, your lawyer, and you?
3           THE DEFENDANT:  Yes, your Honor.
4           THE COURT:  Is everything that you understand about
5  your plea and your sentence contained in this plea agreement?
6           THE DEFENDANT:  Yes, your Honor.
7           THE COURT:  Has anything been left out?
8           THE DEFENDANT:  No, your Honor.
9           THE COURT:  Has anyone offered you any inducements or
10 threatened you or forced you to plead guilty or to enter into
11 this plea agreement?
12          THE DEFENDANT:  No, your Honor.
13          THE COURT:  There is a provision in the agreement
14 which provides that if the conditions spelled out in the
15 agreement are satisfied, the United States Attorney's Office
16 for the Southern District of New York will file a motion
17 pursuant to Section 5K1.1 of the sentencing guidelines
18 requesting the Court to sentence Jay I. Gordon in light of the
19 factors set forth in 5K1.1(a)(1) to (5).
20          Do you understand, Mr. Gordon, that even if the
21 government files that motion the Court is under absolutely no
22 obligation to grant the motion.  Do you understand that?
23          THE DEFENDANT:  Yes, your Honor.
24          THE COURT:  There is no waiver of the DNA provision in
25 the plea agreement.  The parties thought it wasn't necessary?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

22

8CCMGORP                  Plea
1          MR. OKULA:  We found that it wasn't necessary in this
2    instance, your Honor.
3          THE COURT:  Mr. Gordon, do you understand that the
4    Court is not bound by the plea agreement or by any of the
5    provisions of the plea agreement?
6          THE DEFENDANT:  Yes, your Honor.
7          THE COURT:  Do you understand that the Court must make
8    an independent determination of the appropriate and reasonable
9    sentence in your case.  And even if that sentence differs from
10   anything that's contained in the plea agreement, you will still
11   be bound by your guilty plea and you will not be allowed to
12   withdraw your plea of guilty?
13         THE DEFENDANT:  Yes, your Honor.
14         THE COURT:  Mr. Shargel, do you know of any valid
15   defense that would prevail at the trial of Mr. Gordon?
16         MR. SHARGEL:  No, sir.
17         THE COURT:  Do you know of any reason why Mr. Gordon
18   should not be permitted to plead guilty?
19         MR. SHARGEL:  I know of no such reason.
20         THE COURT:  Mr. Gordon, tell me what you did in
21   connection with two offenses that you're entering a plea of
22   guilty to.
23         THE DEFENDANT:  With regard to Count 1 of the
24   information, from in or about 1999 through in or about 2004, in
25   the Southern District of New York and elsewhere, I corruptly
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

23

8CCMGORP                    Plea

1   obstructed and impeded the due administration of the internal
2   revenue laws, and I did this in two ways.  First --
3           THE COURT:  I'm sorry.  Could you just speak a little
4   louder.  You corruptly obstructed --
5           THE DEFENDANT:  And impeded the due administration of
6   the internal revenue laws.  I did this in two ways.
7           First, with regard to five different clients I failed
8   to correctly disclose to the IRS referral fees that I received
9   in connection with tax shelter referrals or reported the
10  receipt of the fees but then claimed falsely fraudulent losses
11  attributable to other tax shelter transactions.
12          Second, on my individual income tax returns, I claimed
13  in excess of $10,000 in false and fraudulent schedule A
14  itemized deductions.
15          With regard to Count 2 of the information, from in or
16  about early 2000 through in or about 2004, in the Southern
17  District of New York and elsewhere, I, together with others,
18  unlawfully, willfully, and knowingly conspired and agreed to
19  defraud the Internal Revenue Service.  Specifically, I and
20  others agreed to and did issue various opinion letters in
21  connection with tax shelter transactions, including opinions
22  for the transactions of an entity controlled by John P. Ohle,
23  III.  When writing these opinion letters we incorporated false
24  and fraudulent statements and omitted material facts.
25          THE COURT:  With respect to what you explained in
                  SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

24

8CCMGORP                          Plea
1    Count 1 about the corrupting and obstructing and impeding the
2    IRS, did you do that with the intent or design to obtain a
3    financial advantage for yourself?
4              THE DEFENDANT:  Yes, your Honor.
5              THE COURT:  You had mentioned the Southern District of
6    New York.  Where did you do the acts that you have described to
7    me?
8              THE DEFENDANT:  Manhattan.
9              THE COURT:  And when you did the acts that you
10   described to me in connection with Count 1, did you know that
11   what you were doing was wrong and illegal?
12             THE DEFENDANT:  Yes, your Honor.
13             THE COURT:  With respect to Count 2, one of the overt
14   acts is that on or about September 23, 2003, you signed an
15   engagement letter addressed to coconspirator John P. Ohle, III,
16   which was caused to be sent from New York, New York to Chicago,
17   Illinois.  Did you do that?
18             THE DEFENDANT:  Yes, your Honor.
19             THE COURT:  Was that in furtherance of the conspiracy
20   that you described to me?
21             THE DEFENDANT:  Yes, your Honor.
22             THE COURT:  When you did the acts that you described
23   to me in Count 2, did you know that what you were doing was
24   wrong and illegal?
25             THE DEFENDANT:  Yes, your Honor.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

25

```
      8CCMGORP              Plea
 1              THE COURT:  Does the government want me to ask any
 2    other questions of the defendant?
 3              MR. OKULA:  No, your Honor.  I believe the allocution
 4    is satisfactory.
 5              THE COURT:  Tell me what the government's evidence
 6    would be.
 7              MR. OKULA:  With respect to Count 1, your Honor, the
 8    IRS obstruction count, the United States would be able to
 9    prove, among other things, that the defendant, when acting as a
10    lawyer at the law firm for the period 1999 through 2003,
11    referred various clients to tax shelter promotors or tax
12    shelter boutiques with the understanding that these tax shelter
13    boutiques would pay to the defendant in exchange for the
14    referrals certain referral fees.  Pursuant to that
15    understanding the defendant referred a number of clients and
16    the tax shelter boutiques paid the defendant hundreds of
17    thousands of dollars of referral fees.
18              With respect to certain of the fees, particularly the
19    initial ones received in 1999, the defendant received those
20    fees and failed in all respects to report them to the IRS.
21              With respect to some of the later fees that were paid
22    to him by these tax shelter boutiques or in one case a
23    Chicago-based bank whose innovative strategies group also paid
24    referral fees, the defendant reported the receipt of those fees
25    on a limited liability company that he controlled, but evaded
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

26

8CCMGORP                    Plea

1   his tax obligations stemming from the receipt of that income by
2   claiming himself false and fraudulent tax shelter losses on his
3   own returns.
4          In addition to the foregoing, your Honor, for each of
5   the years 1999 through 2002, the defendant claimed false and
6   fraudulent itemized deductions on his schedule A to his form
7   1040 that he filed with the IRS, and those false and fraudulent
8   expenses were principally in the form of purported unreimbursed
9   business expenses.
10         With respect to Count 2, your Honor, the United States
11  would be able to prove, among other things, that the defendant,
12  acting through the law firm, issued a number of opinion letters
13  to clients who participated in tax shelter transactions.  The
14  defendant knew and understood as an attorney that the results
15  from those transactions would be respected or be valid if
16  evaluated by the IRS if and only if the participant had, among
17  other things, a nontax business purpose for engaging in the
18  financial transactions that were a part of the tax shelter
19  transactions.
20         The defendant conspired with a number of individuals,
21  including Mr. Ohle, who controlled a tax shelter boutique in
22  the Chicago area, to create false and fraudulent nontax
23  justifications for the participation of certain clients in the
24  tax shelter transactions, and they did that with the design to
25  defraud the IRS, that is, if the IRS were to examine the

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

27

8CCMGORP                    Plea
1    validity of some of those transactions, they would look to,
2    among other things, the opinion letter issued by the defendant.
3              The defendant knew and understood that if he and the
4    others contained false representations regarding, among other
5    things, the business justification for the client's
6    participation in the transaction, that there stood a real
7    likelihood that the IRS would be defrauded, that is, led to
8    believe that there were legitimate nontax business reasons
9    when, in fact, there were not.  Pursuant to that, the legal
10   understanding that the defendant had with others, including
11   Mr. Ohle, the defendant issued opinion letters, including the
12   ones referred to in the information, one of which was for an
13   opinion letter for John Ohle that the defendant signed and sent
14   to Mr. Ohle on or about October 15 of 2003.
15             That is among the many facts we will be able to prove
16   to establish our case, your Honor.
17             THE COURT:  All that evidence would prove all of each
18   of the elements of each of the offenses beyond a reasonable
19   doubt?
20             MR. OKULA:  Indeed, your Honor.
21             THE COURT:  Mr. Gordon, how do you plead to the charge
22   against you in Count 1 of the information, guilty or not
23   guilty?
24             THE DEFENDANT:  Guilty, your Honor.
25             THE COURT:  Mr. Gordon, how do you plead to the charge
                   SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

28

8CCMGORP                        Plea

1   against you in Count 2 of the information, guilty or not
2   guilty?
3                   THE DEFENDANT:  Guilty, your Honor.
4                   THE COURT:  Mr. Gordon, are you pleading guilty
5   because you are, in fact, guilty?
6                   THE DEFENDANT:  Yes, your Honor.
7                   THE COURT:  Are you pleading guilty voluntarily and of
8   your own free will?
9                   THE DEFENDANT:  Yes, your Honor.
10                  THE COURT:  Before I finally accept the defendant's
11  plea, Mr. Shargel, do you want me to ask any other questions of
12  the defendant?
13                  MR. SHARGEL:  No, sir.
14                  THE COURT:  Do you know of any reason that I should
15  not accept his plea?
16                  MR. SHARGEL:  No, sir.
17                  THE COURT:  Mr. Okula, before I finally accept the
18  defendant's plea, does the government want me to ask any other
19  questions of the defendant?
20                  MR. OKULA:  No, your Honor.
21                  THE COURT:  Does the government know of any reason
22  that I should not accept his plea?
23                  MR. OKULA:  We know of none, your Honor.
24                  THE COURT:  Mr. Gordon, because you acknowledge that
25  you are guilty as charged in Counts 1 and 2 of the information,

                    SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

29

8CCMGORP                    Plea

```
 1   because I find that you know your rights and are waiving them
 2   knowingly and voluntarily, because I find that your plea is
 3   entered knowingly and voluntarily and is supported by an
 4   independent basis in fact containing each of the essential
 5   elements of the offenses, I accept your guilty plea and I
 6   adjudge you guilty of the offenses to which you are pleading.
 7            Mr. Gordon, the probation department will now prepare
 8   the presentence report to assist me in sentencing you.  You
 9   will be interviewed by the probation department.  It is very
10   important that the information you provide to the probation
11   department be truthful and accurate.  A presentence report is
12   very important to me in my decision as to what your sentence
13   will be.  You and your lawyer will have the opportunity to
14   review the presentence report, to challenge anything contained
15   in the report, and then to speak on your behalf at sentencing.
16            Give me one moment while I just check the calendar.
17   Do the parties want a date in perhaps June?
18            MR. OKULA:  I was going to suggest just that, your
19   Honor, because there is a related matter that Mr. Gordon's
20   testimony may be needed on.  The date has not been set yet, but
21   I expect it to be some time in the spring.  So I think June
22   would be a control date.
23            THE COURT:  I never like to describe it as a control
24   date.  It's a sentencing date, unless the parties advise me
25   they need more time.
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

30

8CCMGORP                    Plea
 1              How about 9:30 a.m. on June the 19?
 2              MR. OKULA:  That's fine, your Honor.
 3              MR. SHARGEL:  I think that is fine.  That's good.
 4              THE COURT:  Is that good, Mr. Shargel?
 5              MR. SHARGEL:  Yes, Judge.
 6              THE COURT:  June 19 at 9:30 a.m.
 7              I should have asked before, but the defendant had an
 8    initial appearance where he was advised of all of his rights,
 9    right?
10              MR. OKULA:  No, your Honor.  This is the initial
11    appearance.
12              THE COURT:  Because I have a bail report.
13              MR. SHARGEL:  Judge, I think there is an agreement
14    between the parties and that is that Mr. Gordon be released on
15    his own recognizance.
16              THE COURT:  At the defendant's first appearance there
17    is a recitation of rights for the defendant.  Let me go through
18    those rights just to make sure that the defendant is aware of
19    them.
20              MR. SHARGEL:  Judge, may I say this, if it helps the
21    Court.  I think that the rights that would be presented to the
22    defendant were subsumed in the rights in connection with the
23    plea.  I can assure you that he has been advised of the rights
24    that ordinarily are read at the initial appearance.  In other
25    words, I think we can dispense with that, but I leave it to
                      SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

8CCMGORP                    Plea

1    your Honor.
2            THE COURT:  Let me go through them in an excess of
3    caution.
4            Mr. Gordon, when a defendant first appears in court
5    there is a list of rights that the defendant is advised of.
6    Let me go through them.  You have the right to remain silent.
7    You need not make any statement.  Even if you've already made
8    statements to the authorities, you need not make any additional
9    statements.  Any statements that you do make can be used
10   against you.
11           Do you understand that?
12           THE DEFENDANT:  Yes, your Honor.
13           THE COURT:  You have the right to be represented by a
14   lawyer today and at all future proceedings.  And if you are
15   unable to afford a lawyer, a lawyer would be provided to you
16   free of cost.
17           Do you understand that?
18           THE DEFENDANT:  Yes, your Honor.
19           THE COURT:  Is there anything about those rights that
20   affects any of your other responses today, your waiver of
21   indictment, your agreement to plead guilty, and your guilty
22   plea?
23           THE DEFENDANT:  No, your Honor.
24           THE COURT:  Do you want to change any of your other
25   responses, any of your responses today?
                    SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

32

```
          8CCMGORP                    Plea
 1                THE DEFENDANT:  No, your Honor.
 2                THE COURT:  There is an agreement with respect to bail
 3       among the parties?
 4                MR. OKULA:  Yes, your Honor.  I'd like to apologize to
 5       the Court for failing to bring to your attention, the first
 6       appearance issue, so we could have done it in the order that
 7       your Honor would have preferred.
 8                THE COURT:  It's all right.
 9                MR. OKULA:  Your Honor, I respect the work and the
10       often sage recommendations of the pretrial services unit who
11       had recommended the execution of a bond in connection with the
12       defendant's release.  I'd like to set forth a number of factors
13       that I believe, your Honor, pursuant to an agreement I've
14       reached with Mr. Shargel, would warrant an ROR release,
15       notwithstanding the recommendation.
16                Defendant has strong roots in the community.  He has
17       worked -- he still works locally.  He has lived in his
18       residence for over a decade.  He has been aware of the
19       existence of the investigation for a number of years.  We don't
20       view him in any manner or form as a risk of flight, much less a
21       risk of danger to the community.  But given his posture with
22       our office, that is, his plea of guilty pursuant to a
23       cooperation agreement, his long roots in the community, we
24       would most respectfully urge on the Court the acceptance of our
25       agreement, that is, a release of the defendant on his own
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```

33

8CCMGORP                    Plea
1    recognizance.
2              THE COURT:  Okay.  You can help me on this.  If the
3    defendant is simply released on his own recognizance, does that
4    mean that the defendant doesn't even sign a personal bond
5    agreeing to be here?
6              MR. SHARGEL:  That's correct, your Honor.  Under
7    Section 3142, that would be the condition of release if the
8    government didn't have information that there was a flight
9    risk.  So the first provision in Section 3142 is that a
10   defendant -- I'm paraphrasing, I don't have it in front of
11   me -- is that a defendant shall be released on his own
12   recognizance unless, and then there are factors contained
13   within that unless.
14             MR. OKULA:  I would add, your Honor, that it does
15   constitute, notwithstanding the lack of the signing of a bond,
16   the setting of bail.  I think the appropriate warnings should
17   be delivered, which is the sole condition, your Honor.
18             THE COURT:  Mr. Shargel is right.  It's the first
19   listed option under the statute.  I'll accept the parties'
20   representation, which is from the pretrial services report,
21   that the defendant is not a risk of flight or a danger to the
22   community, so the defendant will be released on his own
23   recognizance.
24             However, Mr. Gordon, I've set the date for sentence
25   for June the 19th at 9:30 a.m.  Do you understand that?
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

34

8CCMGORP                    Plea

```
 1              THE DEFENDANT:  Yes, your Honor.
 2              THE COURT:  Do you understand that if you fail to
 3     return to my courtroom on the date fixed for sentencing or any
 4     adjourned date, you will be guilty of a criminal act for which
 5     you could be sentenced to prison wholly separate, apart from,
 6     and in addition to any other sentence that you might receive
 7     for the crimes to which you just pleaded guilty?
 8              Do you understand that?
 9              THE DEFENDANT:  Yes, your Honor.
10              THE COURT:  Anything further?
11              MR. OKULA:  Nothing.  Thank you, your Honor.
12              MR. SHARGEL:  No, sir.
13              THE COURT:  I'm returning Court Exhibit 1 to the
14     government.
15              Good morning, all.
16                              oOo
17
18
19
20
21
22
23
24
25
```